COMMONWEALTH *vs.* MARTIN A. COLON.

No. 91-P-604.

Middlesex. June 11, 1992. - September 17, 1992.

Present: KASS, PORADA, & LAURENCE, JJ.

*Entrapment. Practice, Criminal,* Instructions to jury. *Controlled Substances. Evidence,* Relevancy and materiality.

Where, on the record as it was developed at the jury-waived trial of a drug trafficking case, it was open to the judge to find that the defendant's supervisor at work either was, or was not, a government agent and to find that the defendant did, or did not, have a predisposition to accommodate his supervisor's request to sell drugs, the judge was warranted in making the ultimate finding that the defendant had not been unlawfully entrapped by the government into making drug sales. [305-308]

There was no merit to the contentions by the defendant in a drug trafficking case that the government had failed to establish the chain of custody necessary to link certain cocaine introduced as exhibits at trial with substances purchased from the defendant, and to show that the material sold was actually a controlled substance. [308-310]

INDICTMENT found and returned in the Superior Court Department on March 27, 1990.

The case was heard by *Walter E. Steele,* J.

*Richard Abbott* for the defendant.

*David R. Marks,* Assistant District Attorney, for the Commonwealth.

KASS, J. 1. *Entrapment.* On August 10, 1989, and again on September 21, 1989, the defendant Colon sold three ounces of cocaine (more precisely, the first sale weighed 73.7 grams, and the second sale weighed 83.8 grams) to a Federal drug enforcement agent. Colon was charged with two counts of trafficking in more than twenty-eight grams of cocaine.[1] He elected to be tried without a jury and was found guilty on

---

[1] G. L. c. 94C, § 32E(*b*)(2).

both counts. His principal defense was that the government had entrapped him into making the sales. Colon testified that Michael Allain, his immediate supervisor at work and the son of his employer, persistently importuned him to sell cocaine to acquaintances of his with whom he, Allain, claimed to be in "big trouble." Although Colon testified that he had resisted procuring cocaine for Allain's acquaintances, Allain punctuated his pleas and demands with the suggestion that Colon's job would be in jeopardy if he did not assist in satisfying the demands for cocaine of the men who were pressuring Allain.[2] There was also evidence from a sergeant of the Ashland police force that Allain earlier had sold drugs to an undercover agent operating under the sergeant's supervision and was told that he could help himself by cooperating with drug enforcement authorities to net other fish.

Unlike the facts in *Commonwealth v. Thompson*, 382 Mass. 379, 385 (1981), the evidence, viewed in a light most favorable to the defendant, suggested efforts beyond mere solicitation to purchase drugs from Colon. Evidence that a government agent pleaded, badgered, or argued with the defendant is enough to raise the entrapment issue. *Commonwealth v. Shuman*, 391 Mass. 345, 351 (1984). *Commonwealth v. Hardy*, 31 Mass. App. Ct. 909, 910 (1991). *Kadis v. United States*, 373 F.2d 370, 374 (1st Cir. 1967). In the instant case, however, it is less than obvious that Allain was an agent of the government. Cooperation with the government in hope of favor is not sufficient; something is to be offered to or asked of the individual claimed to be the government agent. *Commonwealth v. Rancourt*, 399 Mass. 269, 274 (1987). *Commonwealth v. Brzezinski*, 405 Mass. 401, 405 (1989). As there was evidence that the government had sought Allain's cooperation in return for favorable treatment in connection with his own troubles with the government, there was some basis for a finding that Allain in the circumstances was a government agent. Allain was present at both buys by the Federal officers.

---

[2]The parties stipulated that Michael Allain was a fugitive from justice and could not be brought into court by either side.

That there was evidence from which the trier of fact *could* find that Allain had acted as a government agent and that there had been an entrapment is hardly to say that such a finding was compelled, and it is at that point that the defendant's case begins to sag. Viewed favorably to the government, the evidence was that on the occasion of the August 10 sale, Colon dealt enthusiastically with the undercover agents, bargained some ten minutes about the price so that he could make a profit on the transaction, and discussed the prospect of future sales with the agents. On the occasion of the second sale, on September 21, there was again negotiation about price; the buyers and seller spent about thirty minutes together; and there was discussion of future business. The trial judge, of course, was not required to believe Colon's account of pressure from Allain to provide cocaine and could believe that Colon was a dealer in cocaine with a predisposition to sell cocaine to the customers Allain produced. Colon admitted that he and Allain had become "very friendly and we used to get high, do drugs together." It is not unlawful for the government to set out bait for someone who takes the lure with alacrity. See *Commonwealth* v. *Miller*, 361 Mass. 644, 651 (1972); *Commonwealth* v. *Thompson*, 382 Mass. at 384; *Kadis* v. *United States*, 373 F.2d at 374.

Nevertheless, the defendant argues that he is entitled to a reversal of his judgment of conviction because the judge misinstructed himself to the effect that there was no evidence that Allain was an agent of the government. That position rests on the following colloquy during defense counsel's closing argument.

> DEFENSE COUNSEL: "Also a friend of his, someone he had befriended, someone who seemed to be plugged into a world that he wanted to be plugged into in terms of being the boss's son, whatever, was asking him a favor and would be in some trouble himself, to some extent unspecified trouble, but in large trouble himself if this man didn't help him out.

"I respectfully suggest to the Court that the inducement is fairly clear. Mr. Allain was told by the police in the spring of '89 that he was facing up to five years in jail if he didn't come up with a source of cocaine, and this man right here was as good a source as any, he was a cocaine user."

THE COURT: "That's the problem. There's no evidence of that."

DEFENSE COUNSEL: "I'm sorry, Your Honor?"

THE COURT: "There's no evidence that this man was acting as a government agent."

DEFENSE COUNSEL: "Your Honor, Mr. Allain said — Mr. Allain was in the car with the defendant. Mr. Allain — the first D.E.A. agent testified that —"

THE COURT: "Yes, but —"

DEFENSE COUNSEL: "I'm sorry."

THE COURT: "From the government's point of view, this man was the supplier for Allain, and Allain set him up."

We do not think that a judge's remarks in colloquy, whereby the judge tests propositions argued by counsel, ought to be translated into a ruling of law, as the defendant, in effect, asks. The judge may have been expressing, as certainly was warranted by the record, that evidence as to Allain's agency had been extremely thin. Nothing in the evidence described what, if any, specific inducements had been offered and by whom. See and compare *United States* v. *Annese*, 631 F.2d 1041, 1048 (1st Cir. 1980). The judge's remarks in colloquy did not close discussion of the subject. Counsel picked up his argument and continued to attempt to persuade the court that Allain should be viewed as a govern-

ment agent and that Colon's delivery of drugs had not been merely solicited but induced through persistent requests.

When a case is tried without a jury, the legal framework in which facts are to be found is not generally stated with the precision and amplitude of instructions to a jury. As an initial matter, it is presumed that the judge as trier of fact applies correct legal principles. See *United States* v. *Van Fossan*, 899 F.2d 636, 638 (7th Cir. 1990); *People* v. *Brisker*, 169 Ill. App. 3d 1007, 1011 (1988). Comments made by a judge in colloquy with counsel, particularly when counsel are permitted to carry on for the purpose of persuading the judge, are not taken as tantamount to a ruling of law by the judge. See *People* v. *Snulligan*, 204 Ill. App. 3d 110, 115-117 (1990). Cf. *Colesanti* v. *State*, 60 Md. App. 185, 192-193 (1984). A judge sitting without a jury may, to be sure, make an express ruling on a disputed point of law, on the judge's own motion or upon specific request of counsel who desires to preserve a point for appeal. Neither occurred in this case.

On the record as it was developed, it was open to the judge to find that Allain either was, or was not, a government agent and to find that Colon did, or did not, have a predisposition to accommodate Allain's request to sell drugs. The judge could, therefore, make the ultimate finding that Colon had not been unlawfully entrapped.

2. *Linking of the cocaine introduced as exhibits with the substances purchased from the defendant.* Colon asserts two infirmities in the government's proof that Colon was dealing in cocaine,[3] *first*, that the chain of custody was inadequately established, and, *second*, that the material sold was not shown to be a controlled substance. Neither argument is successful.

---

[3]Colon admitted in his direct testimony that he had sold cocaine to the undercover agents, but that testimony was given during the defendant's case, i.e., after the motion for a required finding of not guilty made by the defendant at the close of the government's case. The defendant's arguments concerning identification of the controlled substance in which the defendant is said by the government to have been trafficking are considered on the basis of the proof at that earlier stage of the trial.

As to chain of custody, Agent Botelho, one of the two Federal agents, identified two bags of white powdery substance, which he described as having been purchased from Colon on the two occasions he met with him. He described his initials and signature on an exhibit bag (the initials of the other agent appeared as well on the bag containing the September purchase) and also testified that he had field tested the material. Agent Botelho said that he then sent each bag for further analysis at a United States Drug Enforcement Agency laboratory in New York. A forensic chemist from that laboratory testified that she had received the bags admitted as exhibits from Agent Botelho. On cross-examination Agent Botelho had said it was possible that his fellow agent, Ferebee, sent the second bag to New York. On that expression of doubt by Botelho, the defendant pins his argument of ill-proved chain of custody. It is enough to say that arguable weaknesses in the chain of custody go only to the weight of the evidence that the object introduced is the same object as that connected with the crime; the chain of custody evidence is not nullified by a weak link. See *Commonwealth* v. *White*, 353 Mass. 409, 419-420 (1967), cert. denied, 391 U.S. 968 (1968); *Commonwealth* v. *Diaz*, 15 Mass. App. Ct. 469, 473 (1983).

As to whether the substance bought from him was cocaine, Colon protests that the forensic chemist, Florence Wong, identified the material she analyzed as cocaine hydrochloride. Later in her testimony she referred to the material simply as cocaine. The defendant's argument is that the governing statute does not list "cocaine hydrochloride" as a controlled substance. General Laws c. 94C, § 31, Class B, (*a*)(4), does, however, categorize as a controlled substance a preparation of coca leaves and any salt, compound, or derivative thereof. In addition to Wong's less technical description of the substance as cocaine, the judge could infer that cocaine hydrochloride was a compound of coca leaves. Cf. *Commonwealth*

v. *Chapee*, 397 Mass. 508, 520 (1986). Contrast *Commonwealth* v. *Green*, 408 Mass. 48, 50 (1990).

*Judgments affirmed.*