NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-510

COMMONWEALTH

vs.

JEAN P. DURAND.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial, a District Court judge found the defendant guilty of two counts of assault and battery by means of a dangerous weapon causing serious bodily injury, in violation of G. L. c. 265, § 15A (c) (1), notwithstanding the Commonwealth's concession at trial that the evidence "compelled" the judge to find that the defendant was not criminally responsible.  The defendant appeals, arguing that the evidence was insufficient to sustain the convictions.  We affirm.

Discussion.  The evidence at trial, which included a video recording of the assault on the victim, established that the defendant committed the crimes of which he was convicted.  In his defense, the defendant presented expert testimony that at

the time of the offenses he "was suffering psychotic symptoms as a result of schizophrenia, as a result of which he was not able to appreciate the wrongfulness of his behavior or to conform his conduct to the requirements of the law." The defendant's evidence permitted the finder of fact to have reasonable doubt that the defendant was criminally responsible for the offenses. Therefore, "the Commonwealth [had] the burden of proving beyond a reasonable doubt that the defendant was criminally responsible." Commonwealth v. Lawson, 475 Mass. 806, 811 (2016). The Commonwealth could carry its burden by demonstrating that even though the defendant suffered from a mental disease or defect, it did not cause him "to lack substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Id., quoting Commonwealth v. Keita, 429 Mass. 843, 849-850 (1999).

In assessing the sufficiency of the evidence, "we examine the evidence in the light most favorable to the Commonwealth and determine whether the evidence and the inferences that reasonably could be drawn from it were of sufficient force to permit a rational finder of fact to conclude that the defendant was criminally responsible beyond a reasonable doubt" (quotations and citation omitted). Commonwealth v. Griffin, 475

2

Mass. 848, 856 (2016).  Proof of criminal responsibility may be based on "inferences arising from the circumstances of the offense," as well as "the defendant's words and conduct before, during, and after the offense."  Lawson, 475 Mass. at 816.

As an initial matter, the Commonwealth's concession at trial that the evidence of criminal responsibility was insufficient is irrelevant to our analysis.  Whereas a factual concession is binding, see Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997), a legal concession is not, see id. at 106 n.9.  Because the sufficiency of the evidence is a question of law, see Commonwealth v. Doucette, 408 Mass. 454, 456 (1990); Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410 (2013), the Commonwealth's concession "can legitimately be ignored on appeal."  Va Meng Joe, supra.

The evidence showed that on July 25, 2021, the defendant was involuntarily committed to Lowell General Hospital under G. L. c. 123, § 12, after his arrest for a criminal incident that day in Chelmsford.  His convictions stemmed from his attack on a nurse in the hospital six days later.  His expert forensic psychologist, Shawn Channell, met with the defendant approximately three years later.  Channell reviewed numerous documents to form his opinion; the most significant of these generally are medical records contemporaneous with the crime.

3

In this regard, Channell reviewed the Lowell General Hospital records, which were entered in evidence. The records indicated that on the day he was admitted, the defendant was exhibiting symptoms of schizophrenia. "He was noted to be very paranoid, suspicious, irritable, edgy, and he had disorganized thinking." During his interview with Channell, the defendant reported that the nurse had told him that he deserved to be in jail, and that other patients also had problems with the same nurse; the defendant told the others that he would "take care of it." Channell considered these comments to be evidence of delusional thinking. After the assault at Lowell General Hospital, the defendant was admitted to Bridgewater State Hospital, where his symptoms persisted.

The Lowell General Hospital records, which the judge reviewed and "which provided a great deal of insight for [him]," included other notations that Channell did not mention in his testimony. For example, when the defendant was first admitted, he refused to answer questions about the July 25 incident, saying he needed his lawyer to be present. On July 28, after being hospitalized for three days, he was "calm" and "cooperative." On July 29, although he remained "evasive and guarded," he was still calm and cooperative with his caretakers. On the morning of July 30, he was cooperative and "[m]aintaining

4

control."  Near midnight he woke up "extremely agitated" and paranoid; however, he was "able to de-escalate [him]self."

On the day he attacked the nurse, he was "maintaining control," polite, and cooperative.  The hospital records also state that, just before the attack, he told other patients to "watch this."  The video of the incident shows him calmly walking over to the nurse's station before grabbing a fire extinguisher and suddenly attacking her.  He approached quickly and quietly from behind so that she did not notice she was about to be attacked.

In reviewing the sufficiency of the evidence, we "must view the evidence in the light most favorable to the Commonwealth and must disregard contrary evidence presented by the defendant, including the testimony of a defense expert, unless the contrary evidence demonstrates that the Commonwealth's evidence, or any inference drawn from such evidence, is 'conclusively incorrect.'"  Lawson, 475 Mass. at 817, quoting Commonwealth v. O'Laughlin, 446 Mass. 188, 204 (2006).  Based on the evidence, the judge could have rationally concluded that even if the defendant was not criminally responsible on July 25, and even if he had a mental illness, after six days of hospitalization he was in control of his actions and emotions such that he understood the wrongfulness of attacking the nurse, had the

5

ability to comport his conduct with the law, or both. "There was evidence that the defendant appeared to be acting normally in the days leading up to the [crime]." Griffin, 475 Mass. at 856. Given his guarded and generally calm behavior during his stay at Lowell General Hospital and his words and conduct immediately before the attack, the judge was not "conclusively incorrect," O'Laughlin, supra, in finding that the evidence supported a finding of criminal responsibility. "It will be the rare case where the totality of the evidence regarding the defendant's conduct and the circumstances surrounding the offense will not be sufficient to defeat a defendant's motion for a required finding of not guilty by reason of lack of criminal responsibility." Lawson, supra.

Finally, we are not persuaded by the defendant's argument that the judge applied the wrong legal standard and found him guilty only "so that he could be monitored by the probation department." The judge's remark during sentencing that it was "important . . . to keep [the defendant] on probationary terms so that we know that he continues on the [positive] path that he's directed towards now," was a response to the defendant's request that the suspended sentence be stayed pending appeal, not a comment on the evidence or the verdict. We presume that a judge sitting as the trier of fact applies the correct legal

6

standards.  See Commonwealth v. Graziano, 96 Mass. App. Ct. 601, 608 (2019); Commonwealth v. Colon, 33 Mass. App. Ct. 304, 308 (1992).  The judge's comment while imposing the sentence is not "a showing sufficient to overcome that presumption."  Graziano, supra.

Judgments affirmed.

By the Court (Massing,
  Neyman & Smyth, JJ.[1]),

_Paul Little_

Clerk

Entered:  March 13, 2026.

---

[1] The panelists are listed in order of seniority.

7